[No. B122170. Second Dist., Div. Four. Sept. 15, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
TAYLOR BILLINGSLEA BAIL BONDS, Defendant and Appellant.

## COUNSEL

Law Offices of Kenneth F. Weston and Kenneth F. Weston for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, Louis V. Aguilar, Assistant County Counsel, and Robert E. Ragland, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**CURRY, J.**—Appellant Taylor Billingslea Bail Bonds appeals from the trial court's denial of its motion under section 1305.4 of the Penal Code[1] to extend the period within which forfeiture of a bond can be vacated or the bond exonerated after that period had already been extended more than 180 days. Appellant also contends that this court should apply a 1999 amendment to section 980 retroactively, and deem the bond exonerated for failure of the criminal defendant's arrest warrant to appear in the National Criminal Information Center computer system (hereafter NCIC). We conclude that the trial court correctly construed section 1305.4 to preclude further extensions of time and that appellant failed to present sufficient evidence to the trial court to invoke the provisions of section 980. We, therefore, affirm.

### FACTUAL AND PROCEDURAL HISTORY

On January 23, 1997, Amwest Surety Insurance Company executed bond No. X30-4-00066239 in the amount of $20,000 through its bail agent (appellant), for the release of criminal defendant Edimart Osegueda from custody.[2]

On March 14, 1997, Osegueda failed to appear in court as lawfully ordered, and the trial court issued an order forfeiting bail. Timely notice was sent to both the surety and the bail agent on March 26, 1997. In accordance with section 1305, the court had until September 27, 1997, to vacate the forfeiture and/or exonerate the bond.

On August 29, 1997, appellant requested an extension of the 180-day period. The trial court granted an 88-day extension to November 26, 1997.

On November 26, 1997, appellant requested a further extension of the 180-day period. The court granted the request and extended the period

---

[1]All further statutory references are to this code.

[2]Osegueda was charged with selling and transporting a controlled substance.

within which to vacate the forfeiture/exonerate the bond for 60 days, to January 26, 1998.

Although it does not appear in our record, appellant apparently brought a motion to exonerate the bond. On January 26, 1998, the hearing on the motion was continued by the court to February 17, 1998.[3] At the February 17, 1998, hearing, counsel for appellant stated that he had been told by a superior court bailiff working in a different department that Osegueda's arrest warrant had not been entered into NCIC. According to counsel, the bailiff had obtained that information by telephoning the sheriff's warrant division and was apparently informed by an unknown person that Osegueda's arrest warrant could not be found in the system. Archie Barry, a bounty hunter and paralegal for appellant, confirmed at the hearing that he had discovered Osegueda living in Oregon in January of 1998. According to the trial court's clerk, however, Osegueda's arrest warrant had been entered into the California criminal database (TCIS), which the court believed was hooked into NCIC.

Appellant's counsel told the court that he was unable to acquire additional proof that the arrest warrant had not been entered into NCIC because the database is accessible only to law enforcement personnel. At the conclusion of the hearing, the trial judge expressed the belief that appellant's record was incomplete. The court granted another extension, until March 11, 1998, to give appellant an opportunity to substantiate the claim that Osegueda's arrest warrant was not in NCIC or to obtain Osegueda's return.

In a declaration submitted to the court prior to the March hearing, Barry stated that he had discovered Osegueda living in Eugene, Oregon in January of 1988 and that "the Oregon authorities refused to help us apprehend said fugitive [Osegueda], since there was no warrant in the NCIC system." He obtained a letter from a Eugene public safety officer (which does not appear in our record but was apparently submitted to the trial court) which stated that without entry into NCIC, the Eugene Police Department does not recognize the legitimacy of the bond agent's demand for the defendant.

---

[3]At the time of the trial court proceedings, section 980, subdivision (b) stated: "The clerk shall require the appropriate agency to enter each bench warrant issued on a private surety-bonded felony case into the national warrant system (National Crime Information Center (NCIC))." The 1999 amendment to section 980, subdivision (b) which took effect on January 1, 1999, revised the statute to include the following language: "If the appropriate agency fails to enter the bench warrant into the national warrant system (NCIC), and the court finds that this failure prevented the surety or bond agent from surrendering the fugitive into custody, prevented the fugitive from being arrested or taken into custody, or resulted in the fugitive's subsequent release from custody, the court having jurisdiction over the bail shall, upon petition, set aside the forfeiture of the bond and declare all liability on the bail bond to be exonerated."

Appellant's attorney, Kenneth F. Weston, submitted a declaration in which he stated that he spoke with a district attorney in Oregon who confirmed that Oregon police would not arrest a California fugitive unless he was entered into NCIC or unless California law enforcement personnel sent a direct request. Weston's declaration reiterated the earlier statement that the bailiff serving another department had called the sheriff's "warrant section" and had been told that there was no NCIC warrant for Osegueda.

On March 11, 1998, the trial court continued the motion to March 25 at appellant's request. At the hearing on March 25, appellant's counsel requested a one-week extension to afford him an opportunity to contact the extradition division of the Los Angeles Police Department in the hopes of gaining their cooperation in retrieving Osegueda from Oregon. Appellant did not submit any further evidence to substantiate the claim that Osegueda's arrest warrant was not in NCIC. The trial judge found no further grounds to extend the period under either section 1305 or section 1305.4, and denied appellant's motion to exonerate the bond. In so ruling, the trial judge stated that there was "no authority in either case law or the statute that would permit me to extend the tolling period for more then [sic] 180 days." This appeal followed.

DISCUSSION

I

Under section 1305, the trial court is required to declare a forfeiture of bail when the defendant fails to appear in court without a satisfactory excuse. (§ 1305, subd. (a).) The trial court is also required to cause notice of the forfeiture to be mailed to the bail agent within 30 days thereafter if the amount of the bond or money or property deposited exceeds $400. (§ 1305, subd. (b).) If, inter alia, the defendant appears, is surrendered into custody, or is arrested in the underlying matter within 180 days of the notice of forfeiture, the court must vacate the order of forfeiture and exonerate the bond on its own motion.[4] (§ 1305, subd. (c)(1)-(3); *County of Los Angeles* v. *National Automobile & Casualty Ins. Co.* (1998) 67 Cal.App.4th 271, 275 [79 Cal.Rptr.2d 5].) An order of forfeiture may also be vacated on motion. (§ 1305, subd. (c)(4).) Section 1305 allows for a tolling of the 180-day period if the defendant is unable to appear during that time because of "temporary disability" by reason of illness, insanity, or detention by military or civilian authorities. (§ 1305, subd. (e).)

---

[4]The 180-day period for a surety or bail agent to vacate an order of forfeiture under section 1305 is extended 5 days when notice of the order of forfeiture is mailed. (§ 1305, subd. (b).)

Section 1305.4 was enacted by the Legislature in 1996 to permit, upon a showing of good cause, an extension of the 180-day period within which the court may vacate the forfeiture/exonerate the bond. It provides in pertinent part: "Notwithstanding Section 1305, the surety or depositor may file a motion, based upon good cause, for an order extending the 180-day period provided in that section. The motion shall include a declaration or affidavit that states the reasons showing good cause to extend that period. The motion shall be duly served on the prosecuting agency at least 10 days prior to the hearing date. The court, upon a hearing and a showing of good cause, may order the period extended to a time not exceeding 180 days from its order." (Stats. 1996, ch. 354, § 1.)

Appellant's primary contention on appeal is that the language of section 1305.4 should be read to permit the trial court to grant an unlimited series of extensions as long as good cause is shown and no single extension is longer than 180 days. We do not believe that the statute should be read so broadly.

The general principles that guide interpretation of a statutory scheme are well established. When assigned the task of statutory interpretation, we are generally guided by the express words of the statute. " 'Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] To ascertain such intent, courts turn first to the words of the statute itself [citation], and seek to give the words employed by the Legislature their usual and ordinary meaning. [Citation.] When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted. (Code Civ. Proc., § 1858.) The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment. [Citation.]' " (*People* v. *Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 919-920 [66 Cal.Rptr.2d 29], quoting *Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 952 [268 Cal.Rptr. 624].)

The language of section 1305.4 is somewhat ambiguous. "The court, upon a hearing and a showing of good cause, may order the period extended to a time not exceeding 180 days from *its order*." (Italics added.) Does "its order" mean the original order extending the period so that the total of all extensions permitted under section 1305.4 cannot exceed 180 days, or does "its order" mean the order issued in response to each request for extension which could result in limitless extensions of time as long as "good cause" is shown and no single extension exceeds 180 days?

Our answer is provided by the Legislative Counsel's Digest. Discussing the background in which section 1305.4 was enacted, the legislative counsel stated: "Existing law provides that a court shall declare forfeited the undertaking or deposit of bail if, without sufficient excuse, a defendant fails to appear for arraignment, trial, judgment, or any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required, or fails to surrender himself or herself in execution of the judgment after appeal. The court is required to vacate an order of forfeiture if the defendant either voluntarily or in custody appears in court within 180 days of the date of forfeiture or date of making of a notice, as specified." (Legis Counsel's Dig., Sen. Bill No. 1571 (1995-1996 Reg. Sess.); Stats. 1996, ch. 354.)

The legislative counsel then discussed the change that would be wrought by the new provision: "This bill would authorize the surety or depositor to file a motion, based upon good cause, for an order extending the 180-day period that includes a declaration or affidavit that states the reasons why there is good cause to extend that period. If, after a hearing, the court finds good cause to extend the 180-day period, *the court would be authorized to extend that period up to an additional 180 days.*" (Legis Counsel's Dig., Sen. Bill No. 1571 (1995-1996 Reg. Sess.); Stats. 1996, ch. 354, italics added.)

Guided by the language of the statute and the explanation of its provisions provided by the legislative counsel, we are of the opinion that the Legislature intended section 1305.4 to allow an extension of no more than 180 days past the 180-day period set forth in section 1305. The alternative interpretation proposed by appellant would permit the bail agent to obtain a new extension every 180 days, and drag the forfeiture period on indefinitely. This would violate the policy and spirit of the statutory framework within which section 1305.4 is found which strongly favors limiting the amount of time a surety has to challenge forfeiture.

In this case, the trial court granted several extensions of the original 180-day period. As a result of the trial court's various extensions, appellant had from March 26, 1997, to March 25, 1998—a total of 364 days—to adduce evidence to justify vacating the forfeiture and exonerating the bond. The trial judge was correct in its conclusion that it had no authority to extend the forfeiture period under section 1305.4 for an additional week as appellant requested.

## II

■ Appellant contends that the bond must be exonerated as a result of the 1999 amendment to section 980, which was not in effect at the time of the trial court's rulings but which appellant urges us to apply retroactively.

Appellant cites *County of San Bernardino* v. *Ranger Ins. Co.* (1995) 34 Cal.App.4th 1140 [41 Cal.Rptr.2d 57] in support of the proposition that application of section 980 should be applied retroactively in this case because final judgment has not been entered. The court in *Ranger* held that a bail agent was entitled to the benefit of an amendment to section 1305 which made exoneration of a bond automatic upon surrender of the criminal defendant, because the case was not final when the amendment took effect. (34 Cal.App.4th at pp. 1148-1149.) Under the rule in effect while the proceeding was before the trial court, a bail agent was required to apply by motion for an order exonerating the bond after the criminal defendant surrendered. (*Id.* at pp. 1147-1148.) The *Ranger* court specifically held that "a bail bond surety is entitled to the benefit of a statutory change in a case that is not yet final." (*Id.* at p. 1148, citing *People* v. *Durbin* (1966) 64 Cal.2d 474, 478 [50 Cal.Rptr. 657, 413 P.2d 433].)

The *Ranger* court relied primarily on the precedent set forth in *People* v. *Durbin, supra,* 64 Cal.2d 474. The court in *Durbin* had held that a 1963 amendment to section 1305 which required the court to set aside bond forfeitures in cases where the criminal defendant was physically unable to appear, must be applied to all cases not final when the amendment took effect. (64 Cal.2d at p. 478.) Prior to the amendment, the court had discretion to set aside the forfeitures in those circumstances, but there was no mandate. In reversing the trial court's refusal to set aside the forfeiture, the court stated: "[I]t is settled that the repeal of a civil penalty or forfeiture running either to an individual or the state, at any time before final judgment, extinguishes the right to recover the penalty. [Citations.]" (*Ibid.*)

Applying the 1999 amendment to section 980 retroactively in all cases which are not yet final does not, however, assist appellant. As we have seen, despite the fact that section 980 did not yet contain language expressly mandating exoneration of the bond where the arrest warrant has not been entered into NCIC, appellant moved for exoneration on that ground. Faced with the precise issue presented under the 1999 amendment to section 980, the court concluded that appellant had not presented sufficient evidence to establish that Osegueda's warrant was not entered in NCIC.

Reviewing the record, we must agree. The claim that Osegueda's arrest warrant had not been entered in NCIC was based solely on hearsay and

double hearsay evidence—(1) the statement of an Oregon police officer to appellant's investigator and (2) the statement of an unidentified sheriff's department employee to a bailiff which was reported to appellant's counsel. Against that, the trial court had evidence to suggest that because the warrant was entered into California's TCIS system, it should have appeared in NCIC. The trial court granted appellant several extensions to augment the record, but appellant did not present any more or different evidence. Under the circumstances, the court was fully justified in holding that appellant's burden of proof had not been met and refusing to exonerate the bond.

DISPOSITION

The order is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.